## No. 21858.

L. M. LARSON AND PIKE REALTY COMPANY v. DEAN F. CHAUSSEE AND SPRINGS ENTERPRISES, INC.

(452 P.2d 30)

Decided March 24, 1969. Rehearing denied April 14, 1969.

438

GIBSON, GIBSON, COLE & GERDES, GEORGE M. GIBSON, for plaintiffs in error.

TROTT, KUNSTLE, O'LEARY and RATNER, HOWARD J. KUNSTLE, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE LEE.

PLAINTIFFS in error were plaintiffs below and will be referred to herein as "plaintiffs" or as "Larson" and "Pike Realty Company." Defendants in error were defendants below and will be referred to herein as "defendants" or as "Chaussee" and "Springs Enterprises, Inc."

Larson was the sole owner of all of the capital stock of Pike Realty Company, a Colorado corporation, and to all intents and purposes the claims of each plaintiff against defendants are one and the same. Likewise, Chaussee was the sole stockholder in Springs Enterprises, Inc. and plaintiffs seek the same relief from each of the defendants jointly and severally.

Plaintiffs sought damages, an accounting, and declaration of constructive trust pursuant to which defendants be required to assign to plaintiffs all right, title and interest in certain real estate optioned by defendants from a third party while defendant Chaussee was in the employ of plaintiffs. The defendants generally denied the allegations of plaintiffs' complaint.

It was stipulated that the basic issue of liability would be tried first and that all issues relating to damages, accounting, and further relief would be reserved for separate trial following the court's determination of liability.

The issue of liability was tried to the court without a jury and, after hearing all of the evidence from plaintiffs and defendants, judgment of dismissal was entered in favor of defendants and against the plaintiffs. A motion for new trial was denied and the matter is here on writ of error.

Plaintiffs specify error in two particulars. First, the court erred in not finding from the evidence that a fiduciary relationship existed between Larson and Chaussee. Second, the court erred in refusing to admit into evidence two of plaintiffs' exhibits.

We do not consider either assignment of error to be meritorious and we therefore affirm the judgment of the trial court.

The first assignment of error is predicated upon what we believe to be an erroneous assumption, that is, that the evidence in all particulars essential to the establishment of a constructive trust was undisputed. Our study of the record convinces us otherwise.

A brief review of the relationship out of which plaintiffs' claims arose reveals that Larson was a real estate broker and the owner of Pike Realty Company, and defendant Chaussee was a real estate salesman employed by plaintiffs. Larson in his real estate activities had become acquainted with one J. Selby Young who owned approximately 315 acres of undeveloped land in the Austin Bluffs area northeast of Colorado Springs. Young, Larson and others over a period of months had discussed the potential development of the general area, including the building of a golf course and organization of a country club. As a result of these discussions and their association, Larson and Young became very good friends. Young, in writing, appointed Larson as his agent, granting him the exclusive right to sell all of Young's lands in the Austin Bluffs area for a period of one year with an option to renew.

Chaussee became acquainted with Young through Larson while acting as a salesman for Pike Realty. An arrangement was entered into whereby one Van Horn, an investor, purchased 20 acres of Young's land for development. Chaussee became the manager of the development and Larson and Pike Realty acted as sales agent. Subsequently, Chaussee, with Larson's knowledge and approval, bought out Van Horn's interest, assuming the purchase money mortgage and all development costs. Chaussee then became the owner as well as the developer. Sales of sites were still directed through Larson and Pike Realty. These activities continued over a period of time from 1954 through 1959.

Young became dissatisfied because of lack of progress in promotion and sales. He decided to dispose of additional lands. After Young had made an offer to both

Larson and Chaussee, Chaussee purchased these lands which consisted of 18.6 acres, together with option rights to the remaining 40 acres of Young's land. It is in this connection that plaintiffs claim relief from defendants. Plaintiffs contended that Chaussee, because of his fiduciary relationship as an employee of plaintiffs, could not in equity and good conscience purchase from Young the 18.6 acres, together with option rights, to the exclusion of Larson, thereby denying Larson and Pike Realty of the exclusive sale rights.

The actual platting and subdivision of the 18.6 acres and the development of the subdivision sites did not occur until after Chaussee had terminated his employment with plaintiffs and established his own real estate broker business in 1960.

Chaussee's control over the last 40 acres of Young's land, acquired by means of the option which Larson contended in equity belonged to him, was lost when Young sold the remaining 40 acres at public auction. Plaintiffs' claim to have Chaussee declared a constructive trustee of this interest was thereby rendered moot.

The court entered extensive detailed findings of fact. Relating to Chaussee's purchase of the 18.6-acre tract from Young, the court found:

"* * * In the latter part of 1958 and early 1959, J. Selby Young apprised the parties of his desire to sell an additional amount of land adjoining and in the same locale as the twenty (20) acres comprising Country Club Number 1 and 2. After an elapse of time, Young reduced his verbal proposal to sell to a written memorandum setting forth terms and conditions, and addressed to both plaintiff and defendant. *This proposal was not exclusive to either party.* This instrument was not in the form, or did it denote intent as an offer to list or to create an agency. *After sufficient knowledge, opportunity and disclosure to both parties,* the defendant purchased the eighteen point six (18.6) acres from the seller, J. Selby Young on May 1, 1959. * * * As a result of defendant's

termination of employment and subsequent thereto, the plaintiff has not participated in the sales or commissions from Country Club Number 3, or the remaining lots and house sales from Country Club Number 1 and 2." (Emphasis added.)

The court concluded in law as follows:

"That there existed an exclusive right to sell between J. Selby Young and plaintiff from April 1, 1953, until April 1, 1954; that thereafter, no exclusive agency existing [sic] giving plaintiff exclusive right to represent J. Selby Young in all transactions concerning the land in question. That by virtue of plaintiff's relationship with Young, a subsequent owner of the property was not bound to sell or perform in his use of the property subject to terms and conditions set forth by plaintiff unless a legally binding subsequent agreement was entered into by the parties. No exclusive sales agency was granted to the plaintiff or any right, title or interest in any part or parcel of this land, only a mutual beneficial arrangement existed by and through the association and employment of the parties which was flexable [sic] and terminable at any time. That plaintiff received no interest or agency in the property acquired by the defendant from J. Selby Young in May, 1959, nor was there any agreement between the parties subsequent thereto that would bind the defendant to account to the plaintiff for subsequent profits from the sale of said lands."

 The findings of fact and conclusions of law are amply supported by the record. One who attempts to compel the declaration of a constructive trust has the burden of establishing the same by *clear and convincing* evidence. *Askins v. Easterling,* 141 Colo. 83, 347 P.2d 126; *Woodruff v. Clarke,* 128 Colo. 387, 262 P.2d 737; *Hoff v. Armbruster,* 125 Colo. 198, 242 P.2d 604; *Fredell v. Eickhoff,* 111 Colo. 465, 142 P.2d 1006; *Botkin v. Pyle,* 91 Colo. 221, 14 P.2d 187. We cannot say as a matter of law that the evidence here was so clear and convincing as to require the declaration of a constructive trust.

■ In *Askins v. Easterling, supra,* this court stated: "The remedy of the constructive trust is explained in 4 *Scott, Trusts,* Sec. 462 (2d ed. 1956). The learned author there states:

" 'A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. * * *' " The relationship between Chaussee and plaintiffs was not one which required Chaussee to hold his interest in the 18.6-acre tract as a constructive trustee for the benefit of Larson and Pike Realty. Larson had been given the opportunity to purchase this acreage from Young but he chose not to do so. And Larson knew at the time the land was offered to him by Young that Young was likewise offering it to Chaussee. Furthermore, Larson stated unequivocally that he had no objection to Chaussee's purchase. Larson's complaint related only to the loss of the option by which the remaining 40 acres could be controlled. However, the option could only be obtained through the purchase of the 18.6 acres which he declined. These circumstances did not oblige Chaussee to convey to Larson his interest in the property purchased from Young, or to account for any of the profits from the development of the land. See also *G. Bogert, The Law of Trusts and Trustees* § 471 (2d ed. 1964).

■ The second assignment of error concerns the court's refusal to admit into evidence two written memoranda, exhibits "E" and "G," which were prepared by Larson and which he stated contained the terms and conditions of the purported agreement between Larson and Chaussee relative to the development of the 18.6 acres. These memoranda were undated, were unsigned, and were not assented to by Chaussee. They contained matters to which Larson had verbally testified. The court denied their admission on the basis that they were self-serving. Plaintiffs contend they were admissible as a past recollection recorded, citing *Jordan v. People,* 151

Colo. 133, 376 P.2d 699. In *Jordan* there was no dispute as to the facts which were recorded stenographically in Jordan's presence and later transcribed, the accuracy of which he readily admitted. In the instant case the memos were made by Larson in Chaussee's absence, were in fact disputed by Chaussee, and the contents thereof were merely cumulative of what Larson had testified. We do not consider the court's refusal to admit exhibits "E" and "G" to be error.

The judgment is affirmed.

MR. CHIEF JUSTICE MCWILLIAMS, MR. JUSTICE DAY and MR. JUSTICE HODGES concur.